```
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

JOHN SNYDER,

                    Plaintiff,        13-CV-6644T

          -v-                         DECISION
                                          AND ORDER
CAROLYN W. COLVIN,
Acting Commissioner OF Social Security,

                    Defendant.
_____
```

John Snyder("plaintiff"), brings this action under Title II of the Social Security Act ("the Act"), claiming that the Commissioner of Social Security ("Commissioner" or "defendant") improperly denied his applications for supplemental security income("SSI") under the Social Security Act.

Currently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons set forth below, plaintiff's motion is denied and defendant's motion is granted.

## **PROCEDURAL HISTORY**

On October 12, 2010, plaintiff filed an application for SSI alleging disability as of August 2, 2008. Administrative Transcript ("T.") 152-157. Following an initial denial of that application on January 3, 2011, plaintiff testified at a hearing, held at his request on April 3, 2012, before administrative law judge ("ALJ") Michael Devlin. T. 49-72, 78.  An unfavorable decision was issued

on August 31, 2012, and a request for review was denied by the Appeals Council on October 28, 2013. T. 1-6, 24-41.

Considering the case *de novo* and applying the five-step analysis contained in the Social Security Administration's regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ made, *inter alia*, the following findings: (1) plaintiff had not engaged in substantial gainful activity since the October 12, 2010 application date; (2) his musculoskeletal ligamentous, lumbar degenerative disc disease, bipolar disorder, intermittent explosive disorder, and antisocial personality disorder were severe impairments; (3) his impairments, singly or combined, did not meet or medically equal the severity of any impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920[d], 416.925, 416.926); and (4) plaintiff had the residual functional capacity to perform sedentary work as defined in 20 CFR 416967(a) with the following limitations: occasionally lift and/or carry 10 pounds and frequently lift and/or carry less than 10 pounds; stand and/or walk for at least two hours and sit for about six hours in an eight-hour work day; occasionally push and/or pull 10 pounds; occasionally climb ramps and/or stairs, balance, stoop, kneel crouch, and crawl; rarely climb ladders, ropes, or scaffolds; understand, remember, and carry out simple instructions and task; occasionally interact with coworkers and supervisors; little to no contact with the general public; and consistently maintain concentration and focus

up to two hours at a time. T. 29-34.  The ALJ further found that plaintiff had no past relevant work and that, at 40 years old, plaintiff was defined under the Act as a younger individual aged 18-44 years  T. 29-31.

The Appeals Council declined to review the ALJ's decision, and this action ensued. T 1.

## DISCUSSION

### I. General Legal Principles

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  This section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir.1999), *quoting Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir.1983) (per curiam).  Section 405(g) limits the

scope of the Court's review to two inquiries: whether the Commissioner's findings were supported by substantial evidence in the record as a whole and whether the Commissioner's conclusions are based upon an erroneous legal standard. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir.2003).

## II. <u>Relevant Medical Evidence</u>

The record reflects that, at the Commissioner's request, plaintiff underwent a psychiatric evaluation on January 9, 2010 by Dr. Christine Ransom. T. 310-313. Dr. Ransom noted that plaintiff received outpatient treatment for bipolar disorder while in jail from September 2009 to November 2009, but he had no hospitalization history. T. 310. Since then, plaintiff received medication for bipolar disorder from his primary care physician. T. 310. Plaintiff reported that his medication caused him to sleep about 15 hours a day and that he continued to become angry very quickly. T. 310. He also reported manic episodes and mood swings that prevented him from keeping friends and racing thoughts. T. 311.

Dr. Ransom noted that, during her examination, plaintiff was dressed neatly with adequate hygiene and grooming. T. 311. His speech was intelligible, and his voice was clear and moderately pressured. T. 311. He was coherent with no evidence of hallucinations, delusions, or paranoia. T. 311. Dr. Ransom further noted that: plaintiff's concentration and immediate memory were mildly to moderately impaired by mood disturbances; and his

intellectual functioning was average; his insight and judgment were good. T. 311-312.  Dr. Ransom diagnosed plaintiff with drug and alcohol dependance, currently in remission, moderate bipolar disorder, and lower back pain. T. 313.  She opined that plaintiff: could follow simple directions and instructions; could independently perform simple tasks; maintain a simple, regular schedule and learn new, simple tasks; had moderate difficultly performing complex tasks, relating adequately to others and appropriately dealing with stress due to his moderate bipolar disorder. T. 312.  State agency psychologists, Drs. Charles and Harding reviewed plaintiff's file in January and February 2010. T. 320-322, 339-353.  Dr. Charles's assessment of plaintiff's mental residual functional capacity ("RFC") essentially adopted Dr. Ransom's findings. T. 322.  Dr. Harding found that plaintiff's affective disorder, bipolar syndrome, mildly to moderately restricted his daily living, social functioning, concentration, and persistence or pace, and he had less than three extended episodes deterioration. T. 349.  He opined that plaintiff's condition did not meet the requirements of any Listing. T. 350.

During a psychiatric evaluation conducted by Monroe County Correctional Medical Care in September 2009, plaintiff reported an increased of anger and "good" sleep, appetite, and energy, although he did complain back pain. T. 289.  The evaluation noted that plaintiff was hypersexual with impulsive behavior, a history of

bipolar disorder, and racing thoughts. T. 289.  Plaintiff was prescribed Geodon, and he reported that it was helping with his mood and anger. T. 288.

Psychiatric records from the Genesee Mental Health Center, where plaintiff was treated from May 2011 to July 2011, note that plaintiff reported a history of bipolar disorder, pain in his back and arm, and a quick temper. T. 512, 527.  A pre-admission screening revealed that although plaintiff was anxious and labile with tangential thoughts and poor impulse control, he was goal-directed with fair insight, judgment, and concentration. T. 528. Plaintiff was diagnosed with intermittent explosive disorder, bipolar disorder, antisocial personality disorder, and a GAF score of 50. T. 510, 515, 528.  During continued therapy sessions, plaintiff was sometimes irritable, agitated, anxious, angry, restless, and impulsive, among other things, with a lack of remorse. T. 514, 516-519. By June 22, 2011, however, it was noted that plaintiff's condition was "much improved" and stabilizing, with clearing thinking, an improved mood, and logical thoughts. T. 520.  At plaintiff's last appointment on July 22, 2011, he was irritable, mildly anxious, and labile, but still goal-oriented, calm, and logical with an improved mood. T. 523-524.

Plaintiff underwent an examination of his physical condition by Dr. George Sirotenko on January 9, 2010 at the request of the Commissioner. T. 314-318.  Plaintiff reported having a dull,

toothache-like lower back pain since 2011, which was aggravated by activities lasting more than one hour. T. 314. A spinal x-ray revealed degenerative disc disease. T. 314, 318. Dr. Sirotenko's physical examination revealed no acute distress with a normal gait and station. T. 315. Plaintiff's musculoskeletal examination revealed, among other things: full flexion, extension, lateral flexion, and full rotary movements bilaterally in the cervical spine; no abnormality in the thoracic spine; some lumbar spine limitations with forward flexion 40 degrees, extension 20 degrees, lateral rotation 20 degrees and paralumbar tenderness L3 to L5; full range of motion in his shoulders, elbows, forearms, wrists, fingers, hips, knees, and ankles bilaterally; and his strength was 5/5 bilaterally in the upper and lower extremities. T. 316. Dr. Sirotenko opined that plaintiff had a degenerative back pain with mild limitation in range of motion with a fair prognosis. T. 317. Dr. Sirotenko concluded that plaintiff was limited from pushing, pulling or lifting more than a moderate degree of weight repeatedly over his head. T. 317.

Plaintiff's medical records reveal that he was treated by the Rochester General Medical Group in September 2009 and diagnosed with degenerative disc disease with limited range of motion, lower back pain, and right sciatica. T. 329. In March 2010 and February 2011, plaintiff was again diagnosed with lumbar tenderness, mild knee pain, lower back pain, sciatica, and bipolar disorder by his

treating physicians, and he began taking Flexeril, naproxen, and Abilify. T. 406-407, 437-440.

Plaintiff was involved in a motor vehicle accident on April 28, 2011 and sustained two left wrist fractures with no additional abnormalities reported during his examination at the hospital emergency department apart from his degenerative disc disease. T. 422-436, 451, 453, 477-491. In her treatment records from May 2011 to February 2012, plaintiff's primary care physician, Dr. Hyun Yoo, assessed plaintiff with chronic back pain and sciatica, bipolar disorder, and vision changes. T. 409-415. A July 2011 MRI scan revealed mild spondylosis of the lumbosacral spine, moderate left neural foraminal narrowing at L5-S1 and on the right at L3-4, left foraminal disc protrusion at L5-S1, abutting the left L5 nerve root, and degenerative disc disease. T. 469-470.

### III. **Non-Medical Evidence**

Plaintiff, 41 years old at the time of the hearing, testified that he has not performed any work since 1990 due to his back problems, glaucoma, and an injured left wrist, ankle, and knee. T. 55-57, 59-60. Plaintiff cannot sit for longer than an hour before he experiences shooting sciatic nerve pain down both legs. T. 58. He can stand for about an hour and a half and walk for about a mile and a half. T. 59. Plaintiff can lift up to 20 pounds, and he has difficultly bending at the waist "sometimes." T. 59-60. Plaintiff takes naproxen and Flexeril to treat his pain

8

and while he did not notice any side effects from the medications, they were no longer effective. T. 60. Plaintiff is near-sighted and uses eye drops to manage his glaucoma. T. 61. He takes Topamax to treat his bipolar disorder, which helps control his temper and improves his ability to communicate with others. T. 62. Plaintiff was incarcerated from 1993 to 2003 and served time for an assault offense in 2010. T. 62-63. Plaintiff is able to help his partner with cooking, cleaning, laundry, and taking care of the dog. T. 64. He has not consumed any drugs or alcoholic beverages in nine years. T. 64.

The ALJ also heard testimony from VE Peter Manzi, to whom he posed a hypothetical requesting an opinion identifying jobs that an individual of plaintiff's age and education with no past relevant work could perform, with the following limitations: occasionally lift and/or carry 20 pounds and frequently left and/or carry ten pounds; stand and/or walk for at least six hours in an eight-hour day; sit for about six hours in an eight-hour day; occasionally push and/or pull 20 pounds; occasionally climb ramps and/or stairs, and balance, stoop, kneel, crouch and crawl; rarely climb ladders, ropes or scaffolds; understand, remember and carry out simple instructions and tasks; occasionally interact with coworkers and supervisors; have little to no contact with the general public; and consistently maintain concentration and focus for up to two hours at a time. T. 65-66.

The VE opined that such a person could perform the light, unskilled jobs of collator operator, of which there were 44,148 jobs nationally and 205 locally, and laundry sorter, of which there were 128,478 jobs nationally and 378 locally. T. 66. The ALJ posed a second hypothetical to the VE requesting an opinion whether an individual of plaintiff's age and education with no past relevant work could perform sedentary work with the same limitations, except for the following changes: occasionally lift and/or carry 10 pounds; stand and/or walk at least two hours in an eight-hour day; sit for about six hours in an eight-hour day; and occasionally push and/or pull up to 10 pounds. T. 67. The VE opined that such a person could perform the sedentary, unskilled jobs of general assembler, of which there were 35,228 jobs nationally and 119 jobs locally, and addresser, of which there were 25,042 jobs nationally and 223 jobs locally. T. 67. He further opined that no jobs existed for an individual that was unable to sit, stand and walk in combination for at least eight hours in an eight-hour day and that an employee who was unable to interact appropriately with coworkers and supervisors on a consistent basis would be terminated. T. 67-68.

**IV. The Commissioner's Decision Denying Benefits is Supported by Substantial Evidence in the Record.**

**A.   RFC Assessment**

Plaintiff contends that remand is warranted here because the ALJ's RFC assessment is not based on substantial evidence because

the ALJ failed to properly consider plaintiff's claim of a learning disability. Plaintiff's memorandum of law, p. 14-18. Defendant responds that the record is almost entirely devoid of any evidence of a learning impairment, and that, nonetheless, the ALJ considered plaintiff's intellectual limitations in reaching his RFC determination. Defendant's memorandum of law, p. 12-13.

Even assuming, *arguendo*, that the ALJ erred at the second step by failing to recognize that he suffered from a learning disbaility constituting a severe impairment, remand is not warranted because "the ALJ did identify severe impairments at step two, so that [plaintiff's']claim proceeded through the sequential evaluation process." *Stanton v. Astrue*, 370 Fed. App'x 231, 233 n.1 (2d Cir.2010); *see also Southard v Colvin,* 2014 WL 1311822, at *7-8 (N.D.N.Y. 2014).

Further "[i]t is well-settled that '[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hogan v. Astrue*, 491 F. Supp.2d 347, 354 (W.D.N.Y. 2007), quoting Social Security Ruling 96-8p, 1996 WL 374184, *7 (S.S.A. 1996) and citing *Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998). In this case, the evidence shows that none of plaintiff's treating physicians or consultative examiners noted any apparent learning disability, below average intellect, or

cognitive impairments. Although plaintiff did report that he had been in special education, he stated that it was "due to emotional problems," not an intellectual impairment. T. 310. In any event, contrary to plaintiff's contention, the ALJ's decision considers plaintiff's cognitive abilities in the RFC recommendation by limiting plaintiff's work to understanding, remembering, and carrying out simple instructions and tasks and maintaining concentration and focus for up to two hours at a time. T. 31. The ALJ further limits plaintiff to occasional interaction with coworkers and supervisors and no contact with the general public. T. 31. There is no basis for this Court to conclude that a different result would have been reached absent the ALJ's alleged error in failing to consider plaintiff's intellectual deficiency.

With respect to the ALJ's duty to develop the record, it is well settled that he is required to seek out further information where the evidence is inconsistent or contradictory, or where evidentiary gaps exist. *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir.1999). The ALJ "may ... ask for and consider opinions from medical experts on the nature and severity of [a claimant's] impairment(s) and on whether [her] impairment(s) equals the requirements of any impairment" in the Listings. 20 C.F.R. §§ 404.1527(f)(2)(iii), 416.927(f)(iii).

The Court's review of the ALJ's decision in this case, in light of the record as a whole, supports the conclusion that the

ALJ did not abuse his discretion by failing to order intelligence testing or to again request educational records from the Rochester City School District ("RCSD") in determining whether plaintiff's impairments met or medically equaled the Listings. Again, the only references to plaintiff's alleged learning disability in the record are his own statements that he graduated from the RSCD with an "IEP" and that he was "in special education due to emotional problems." T. 310, 335, 511. In response to a 2010 request for records, the RCSD indicated that it had no records relating to plaintiff. T. 227.

No obvious evidentiary gaps have been identified, nor plaintiff has identified any information in the record to suggest that additional expert testimony or additional testing might have led the ALJ to reach a different conclusion. As there are no obvious gaps, and the record presents "a complete medical history," the ALJ is under no duty to seek additional information before rejecting a claim. *Id*. at 79, n. 5, citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir.1996). The Court, therefore, finds no basis for remand on account of the ALJ's failure to develop the record with respect to plaintiff's claim of a learning disability.

B.  **The ALJ's Step-Three Evaluation of the Evidence**

Plaintiff further contends that remand is warranted on the basis that, at Step 3 of his sequential analysis, the ALJ failed to properly evaluate the relevant medical evidence that allegedly

13

supports a finding that Plaintiff's impairments meet the requirements of Listing 1.04, 12.04, and 12.06. Defendant responds that plaintiff failed to meet his burden of establishing that his physical and mental conditions met the specified medical criteria of the Listings. Defendant's memorandum of law, p. 14-16.

To be considered disabled under Listing 1.04A, plaintiff must demonstrate evidence of a disorder of the spine that results in the compromise of a nerve root or the spinal cord with evidence of nerve root compression. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 1.04, 1.04A. The nerve root compression must be "characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A.

It is the plaintiff's burden to "demonstrate that [his] disability [meets] 'all of the specified medical criteria' of a spinal disorder." *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 888 (2d Cir. 2007), quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530 (citation omitted).

14

Here, the ALJ properly analyzed plaintiff's lumbar spine impairment and concluded that it did not meet the severity of Listing 1.04 (disorders of the spine). T. 30, 33-34. The ALJ also noted that a July 25, 2011 MRI revealed mild spondylosis of plaintiff's lumbosacral spine with moderate neural foraminal narrowing on the left at L5-S1 and right at L3-4, disc protrusion at L5-S1, and mild degenerative changes. However, the ALJ noted that plaintiff's back pain went untreated from December 2009 to February 2011, and that he had no physical restrictions while in jail, and he did not seek treatment from his primary care physician for his back pain for seven months after his July 2011 MRI. T. 33-34. The ALJ further noted that plaintiff was able to do light cooking, cleaning, laundry, and shopping. T. 34.

The ALJ discussed Dr. Sirotenko's January 2010 examination, which revealed, among other things, that plaintiff's gait and heel and toe walking were normal and that his straight leg raise test was negative bilaterally. T. 34. Dr. Sirotenko's x-ray findings of degenerative spondylosis are consistent with the findings of plaintiff's treating physicians. The ALJ also noted that plaintiff "even during times of being insured, [he] has not been compliant with treatment recommendations and treatment has been conservative and routine in nature." T. 34.

With respect to plaintiff's claimed mental impairments, the ALJ's finding that they did not meet or equal the criteria of

listings 12.06 and 12.08 is supported by substantial evidence in the record. Based on the records and opinions summarized above, there is no evidence in the record that plaintiff has marked limitations in any of the areas contained in paragraph B of the listings, nor is there evidence of the presence of the paragraph C criteria.

The Court finds that the ALJ applied the appropriate legal standards in considering all the medical evidence in the record and properly evaluated plaintiff's treating source opinions, treatment notes, and consultative opinions. Consequently, the Court also finds plaintiff's remaining contentions to be without merit. The ALJ was not required to "have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir.1983). The ALJ's determination as to plaintiff's medical condition is based upon substantial evidence in the record and supports his conclusion that the plaintiff was not disabled in accordance with the relevant portions of the Social Security Act.

## **CONCLUSION**

For the foregoing reasons the plaintiff's motion for judgment on the pleadings is denied, and defendant's cross-motion for judgment on the pleadings is granted. The complaint is dismissed in its entirety with prejudice. The ALJ's decision denying

plaintiff's claims for SSI is supported by the substantial evidence in the record.

ALL OF THE ABOVE IS SO ORDERED.

                                        <u>S/ MICHAEL A. TELESCA</u>
                                   HONORABLE MICHAEL A. TELESCA
                                   UNITED STATES DISTRICT JUDGE

DATED: Rochester, New York
        May 27, 2015